# Staunton.

ROANOKE RAILWAY AND ELECTRIC CO. v. STERRETT.

September 15, 1910.

Absent, Cardwell, J.

1. VERDICTS—*Conflicting Evidence.*—Where the evidence is conflicting on a particular phase of a case, the verdict of the jury is conclusive on that phase.

2. CARRIERS—*Personal Injuries—Damages—Refusing to Submit to Treatment.*—Where an injured passenger is attended by physicians of his own choosing as well as by those of the defendant company, and it is claimed by the defendant in an action to recover for such injuries that his injuries were aggravated by his refusal to submit to the treatment and follow the instructions of defendant's physicians, it is proper for the trial court to instruct the jury that the plaintiff's right of recovery for the aggravation of the injury could only be affected by his *unreasonably refusing* to submit to the treatment, or follow the instructions of physicians.

3. CARRIERS—*Injury to Passenger—Negligence—Burden of Proof.*—In an action by a passenger against a common carrier for personal injuries resulting from the collapse of a street railway bridge, proof of the accident raises a *prima facie* presumption of negligence, and shifts upon the defendant the burden of proving that it has not been guilty of negligence, and that the accident resulted from inevitable casualty, or some cause against which human care and foresight could not provide. Hence, upon proof of the accident, it is not error to instruct the jury that the slightest neglect against which human prudence and foresight might have guarded, and by reason of which the injury may have been occasioned, will render the carrier liable.

Error to a judgment of the Circuit Court of Roanoke county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Hall, Woods & Jackson* and *Kime & Fox*, for the plaintiff in error.

*Scott, Altizer & .Watts, N. W. Hairston* and *Hoge & Penn*, for the defendant in error.

Whittle, J., delivered the opinion of the court.

This case is before us the second time. See *Roanoke Ry. & E. Co.* v. *Sterrett*, 108 Va. 533, 62 S. E. 385, 128 Am. St. Rep. 971, 19 L. R. A. (N. S.) 316.

At the last trial the plaintiff, Mary E. Sterrett, was awarded $5,700 damages for injuries sustained by her while a passenger on a motor-car of the defendant, caused by the falling in of its bridge over Tinker creek, between Vinton and Roanoke. On the morning of the accident Mrs. Sterrett boarded the car in question near Vinton for Roanoke. The car continued to take on passengers until it reached the bridge, and entered upon it in an over-crowded condition, moving slowly, and when upon the extreme western section the structure suddenly collapsed, and in the fall the plaintiff, who was standing in the aisle about midway of the car, received the injuries for which she sues.

On the last, as upon the first trial, two wholly distinct theories were presented as to the cause of the accident. On behalf of the plaintiff it was insisted that the original plan of the bridge called for stringers with sufficient lap, resting upon eye-beams, and securely fastened together so as to prevent the possibility of slipping; that some eight or ten months prior to the accident the stringers originally used in the bridge by the Virginia Bridge and Iron Company, who constructed it, were removed and replaced by new stringers laid end to .end and unfastened; and that the slipping of some of these stringers from their supports caused the bridge to col-

lapse.  On the other hand, the theory of the defendant is that there was a defective weld in one of the iron cords, upon which the bridge was dependent for support; that the cord broke at the weak point and the bridge fell, and that the defect was latent and could not be discovered by inspection.

On the first appeal the evidence was found entirely insufficient to sustain the plaintiff's theory.  Indeed, the plaintiff introduced no expert evidence on the subject, and the opinion witnesses for the defendant testified that the conditions described by the non-expert witnesses, even if true, could not possibly have caused or contributed to the accident.  They explained the mechanism of the bridge—that it was built in sections, united by iron cords, which bound them in one span and held up the structure; and that it fell by reason of the latent defect in the weld of one of the eye-bars forming the bottom cord, as before described.  The judgment was consequently reversed by this court and a new trial awarded.

It would serve no good purpose to discuss in detail the evidence as disclosed by the present record.  It is enough to say, that it is to the last degree conflicting.  The expert testimony of the plaintiff controverts utterly the defendant's theory and sustains the opposing hypothesis, that the accident resulted from the slipping of the substituted stringers from the eye-beams, caused by the negligent manner in which they were placed and maintained in the bridge.  Upon familiar principles, therefore, the verdict of the jury is conclusive upon that phase of the case.

The assignments of error touching instructions involve the amendment of instructions "C" and "D" as offered by the defendant.

Instruction "C," as amended, told the jury, "that if they believe from the evidence that the plaintiff *unreasonably* refused to submit to the treatment of physicians, or *unreasonably* refused to follow their instructions in regard to her injuries, and that in consequence of her refusal so to do her

injury was aggravated and increased, then she cannot recover * * * to the extent her conduct resulted in damage to her, and which might have been avoided and prevented by submitting to the treatment and following the directions of her physicians."

The objection goes to the interpolation of the word "unreasonably" in the instruction. The physicians alluded to were the surgeons of the defendant, employed by the company to attend the plaintiff. She had also engaged physicians of her own selection, and by the instruction, as originally offered, was held bound, at the risk of curtailing her recovery of damages, to submit to the treatment prescribed by the defendant's surgeons, whether reasonable or unreasonable. The amended instruction correctly told the jury that the plaintiff's right of recovery could only be affected by her unreasonably refusing to submit to the treatment or follow the instructions of physicians.

The concluding paragraph of instruction "D," as amended, is as follows, the italicized words indicating the amendment to which exception was taken: "Now, if the jury believe from the evidence that the proximate cause of the collapse of the bridge *might have been* the slipping of one or more of the stringers from the eye-beams, and that the defendant was negligent in the method it adopted in placing and maintaining said stringers in the bridge, they must find for the plaintiff; and if they believe from the evidence that the proximate and sole cause of the collapse of the bridge was the breaking of said loop-bar, owing to a hidden or latent defect therein, then they must find for the defendant."

It is true the burden rested upon the plaintiff primarily to establish the negligence of the defendant, but as was said on the former appeal, "where the plaintiff has shown that she was injured by the breaking down of the bridge and overturning of the car, then this is sufficient proof of negligence

on the part of the defendant company to meet the requirements above stated."

In an action by a passenger against a common carrier for personal injuries, proof of the accident raises a *prima facie* presumption of negligence, and shifts upon the defendant the burden of proving that it has not been guilty of negligence, and that the accident resulted from inevitable casualty, or some cause against which human care and foresight could not provide. Accordingly, this court, on the first appeal, approved the following instruction: "The slightest neglect against which human prudence and foresight might have guarded, and by reason of which the injury may have been occasioned, renders the Roanoke Railway Company liable in damages for such injury· *B. & O. R. Co.* v. *Wightman's Admr.*, 29 Gratt. 431, 26 Am. Rep. 384; *B. & O. R. Co.* v. *Noel's Admr.*, 32 Gratt. 394."

The amendment objected to is in the language of the foregoing instruction, which correctly measures the high degree of responsibility owing from a common carrier to a passenger, and is conclusive on the point at issue.

Upon the whole case, we find no error in the judgment, and it must be affirmed.

*Affirmed.*