526 S.E.2d 810

**STATE of West Virginia, Plaintiff below, Appellee,**

v.

**Lawrence Edward CHRISTIAN, III, Defendant below, Appellant.**

**No. 26438.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 1999.

Decided Nov. 19, 1999.

Dissenting Opinion of Justice Maynard Dec. 15, 1999.

Concurring Opinion of Chief Justice Starcher Jan. 6, 2000.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, West Virginia, Attorneys for Appellee.

Steven K. Mancini, Assistant Public Defender, Welch, West Virginia, Attorney for Appellant.

PER CURIAM:

Lawrence E. Christian, III, appellant/defendant (hereinafter referred to as "Mr. Christian"), appeals from a judgment by the Circuit Court of McDowell County sentencing him to twelve years imprisonment after his conviction for voluntary manslaughter. Mr. Christian asserts one assignment of error. Mr. Christian claims the trial court committed error in denying his motion to strike a prospective juror for cause. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we reverse and remand this case for a new trial.

1. Mr. Reed testified that he and Mr. Cleary were "relieving" themselves when he heard a shot ring out. Immediately after Mr. Reed heard the shot, Mr. Reed stated that the car in which Mr. Christian was a passenger sped away from the scene.

2. Mr. Cleary's death appears to have resulted because of an intimate relationship involving Ms. Stanley, Mr. Reed and Mr. Walls. Mr. Reed and

## I.

### FACTUAL AND PROCEDURAL HISTORY

On November 7, 1995, Mr. Christian was a passenger in a car being driven by Ms. April Stanley. Also in the car was another passenger named Mr. Eric Walls. The three individuals were traveling near U.S. Route 52 in Maitland to pick up a vehicle owned by Mr. Walls. They arrived at Mr. Walls' vehicle at approximately 6:00 p.m.

When Mr. Christian and his two companions arrived at Mr. Walls' vehicle, two other individuals, Mr. William Cleary and Mr. Billy Reed, were present at the roadside. The evidence was conflicting as to some of the events that occurred when Mr. Christian and his two companions arrived. Mr. Christian testified that Mr. Cleary approached their car wielding a baseball bat.[1] It was undisputed, however, that Mr. Christian fired a bullet from a .38 revolver while in the car. The bullet fired by Mr. Christian struck Mr. Cleary in the chest and killed him.[2]

Mr. Christian was a juvenile at the time of the shooting. However, he was prosecuted as an adult for first degree murder. The trial began on June 3, 1996. On June 7, 1996, the jury returned a guilty verdict against Mr. Christian for voluntary manslaughter. Mr. Christian was sentenced to twelve years imprisonment on August 8, 1996. On January 8, 1999, Mr. Christian was resentenced.[3] This appeal resulted from the resentencing order.

## II.

### STANDARD OF REVIEW

 The issue presented involves the trial court's ruling denying a motion by Mr. Christian to strike a prospective juror for cause. "A trial court's ruling on a challenge

Mr. Walls had several previous physical confrontations over their affection for Ms. Stanley. Mr. Christian and Mr. Cleary did not know each other.

3. The resentencing was due to Mr. Christian being transferred from a juvenile facility to an adult correctional facility.

for cause is reviewed under an abuse of discretion standard." *State v. Phillips,* 194 W.Va. 569, 588, 461 S.E.2d 75, 94 (1995). This Court has indicated that a trial court's determination as to whether to strike a juror for cause will be "reverse[d] only where actual prejudice is demonstrated." *State v. Miller,* 197 W.Va. 588, 605, 476 S.E.2d 535, 552 (1996) (citation omitted). We have also ruled that "[a]n appellate court only should interfere with a trial court's discretionary ruling on a juror's qualification to serve because of bias only when it is left with a clear and definite impression that a prospective juror would be unable faithfully and impartially to apply the law." Syl. Pt. 6, in part, *State v. Miller.*

## III.

## DISCUSSION

■ During the trial, Mr. Christian moved the court to strike a prospective juror, Ms. Vada Cecil, for cause. During voir dire, Ms. Cecil stated that she had heard information about the case from her sister, who is the mother of Mr. Eric Walls. Ms. Cecil stated that her sister informed her that Mr. Eric Walls was involved in the case. Ms. Cecil also advised the parties that she knew Ms. April Stanley. At the conclusion of the voir dire of Ms. Cecil, Ms. Cecil indicated that she could reach an impartial verdict based upon the evidence. Mr. Christian moved to strike Ms. Cecil for cause. The trial court denied the motion.[4] Mr. Christian utilized a peremptory strike to remove Ms. Cecil from the jury panel.

■ We have previously ruled that "[t]he language of W. Va.Code § 62–3–3 (1949), grants a defendant the specific right to reserve his or her peremptory challenges until an unbiased jury panel is assembled. Consequently, if a defendant validly challenges a prospective juror for cause and the trial court fails to remove the juror, reversible error results even if a defendant subsequently uses his peremptory challenge to correct

the trial court's error." Syl. Pt. 8, *State v. Phillips.* This Court has long held that " '[t]he true test to be applied with regard to qualifications of a juror is whether a juror can, without bias or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had.' *State v. Charlot,* 157 W.Va. 994, 1000, 206 S.E.2d 908, 912 (1974)." Syl. Pt. 1, *State v. Harshbarger,* 170 W.Va. 401, 294 S.E.2d 254 (1982). We have recognized that "[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed."

■ Ms. Cecil responded to questions during voir dire that raised doubt about her possible bias or prejudice. The trial court conducted individual voir dire of Ms. Cecil and afforded to counsel for Mr. Christian and counsel for the State the opportunity to question her. Thus, we find that the trial court followed the proper procedure for determining a juror's qualifications. *See* Syl. Pt. 1, *State v. Finley,* 177 W.Va. 554, 355 S.E.2d 47 (1987) ("When a trial court determines that prospective jurors have been exposed to information which may be prejudicial, the trial court, upon its own motion or motion of counsel, shall question or permit the questioning of the prospective jurors individually, out of the presence of the other prospective jurors, to ascertain whether the prospective jurors remain free of bias or prejudice"). Having determined that the trial court followed the proper procedure, we now consider whether it abused its discretion in refusing to strike Ms. Cecil for cause.

■ In syllabus point 2 of *State v. Kilpatrick,* 158 W.Va. 289, 210 S.E.2d 480 (1974) this Court held that "[w]hen a prospective juror is closely related by consanguinity to a prosecuting witness or to a witness for the prosecution, who has taken an active part in the prosecution or is particularly interested in the result, he should be excluded upon the motion of the adverse party." Mr. Christian

---

**4.** The State contends that this issue was waived by Mr. Christian because it was not raised during the actual trial or post-trial motions. The State cites to no opinion by this Court indicating that

to preserve a juror challenge for appellate review, a defendant must do more than raise the issue during voir dire. We decline to make such a ruling in this case.

cites to *Kilpatrick* as standing for the proposition that "[a] prospective juror who is a relative to a party, important witness, or victim is not permitted to serve as a juror." Mr. Christian has misread *Kilpatrick*.

*Kilpatrick* does not establish a per se removal for cause of a prospective juror who is related to a witness. *Kilpatrick* qualified its ruling by indicating the witness must have (1) taken an active part in the prosecution or (2) be particularly interested in the result. While we believe Mr. Christian misread *Kilpatrick* as establishing a per se removal for cause, we nevertheless find that the decision in *Kilpatrick* warrants reversal in this case.

In *Kilpatrick*, we noted that "[i]n judging possible prejudice on the part of a juror related to the witness other than the prosecuting witness, each case must be decided on its own facts." *Kilpatrick*, 158 W.Va. at 295, 210 S.E.2d at 484 (citation omitted). The record in the instant case is unmistakably clear in showing that Ms. Cecil had a "particular interest" in this case. That interest focused around two facts: (1) Mr. Eric Walls was present when the crime occurred, (2) and Mr. Eric Walls is Ms. Cecil's nephew. It is quite obvious to this Court that the possibility existed that Ms. Cecil would be susceptible to voting to convict Mr. Christian, so as to preclude any later attempts to bring charges against her nephew, Mr. Eric Walls. Our reasoning on this matter is bolstered by this Court's discussion in *State v. Harris*, 69 W.Va. 244, 71 S.E. 609 (1911):

> . . . "Blood is thicker than water;" and it is utterly impossible for any person to determine how far the judgment or action of a person affected by it may be swayed or controlled. It operates upon the mind and heart of the individual secretly and silently. Its operation is not disclosed by any outward manifestation other than the result. It is utterly impossible to look into a man's mind and see its operation. Its effect is not general, like many other disqualifications. It is purely personal, operating between the related parties and to the prejudice of all others. . . . [O]ne who has an interest in the subject-matter of the litigation or is related to one of the parties, is palpably and wholly unfit for service as a juror.

*Harris*, 69 W.Va. at 245–246, 71 S.E. at 609.

Moreover, Ms. Cecil admitted to having discussions with Mr. Eric Walls' mother about the case. It would be unreasonable to assume that during those discussions there was no expression of concern that authorities might seek to criminally prosecute Mr. Eric Walls. Although Ms. Cecil indicated that she believed she could impartially weigh the evidence in this case if allowed to sit on the jury, the possibility of Mr. Eric Walls being prosecuted undoubtedly would have had some impact on her during deliberations. We have previously ruled that "[e]ven though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if other facts in the record indicate to the contrary." *Miller*, 197 W.Va. at 605, 476 S.E.2d at 552. In the instant proceeding "other facts" compel this Court to conclude that Ms. Cecil would not have been an impartial juror. We therefore find that the trial court committed reversible error in failing to strike Ms. Cecil for cause.

## IV.

## CONCLUSION

In view of the foregoing the conviction and sentence in this case are reversed and the case is remanded for a new trial.

Reversed and Remanded.

Judge JOHNSON, sitting by temporary assignment.

Justice SCOTT did not participate.

MAYNARD, Justice, dissenting:

(Filed Dec. 15, 1999)

I dissent because I believe there is no evidence of record that indicates Ms. Cecil would not have been an impartial juror. Therefore, the trial court committed no error in failing to strike Ms. Cecil for cause.

As noted by the majority, "[t]he true test to be applied with regard to qualifications of a juror is whether a juror can, without bias

or prejudice, return a verdict based on the evidence and the court's instructions and disregard any prior opinions he may have had." Syl. pt. 1, *State v. Harshbarger*, 170 W.Va. 401, 294 S.E.2d 254 (1982). Further, "[a]ctual bias can be shown by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed."

In the instant case, Ms. Cecil indicated that she could reach an impartial verdict based upon the evidence. The majority reverses the conviction, however, because Ms. Cecil is the aunt of Eric Walls who was involved in the incident in which the defendant shot Mr. Cleary and was, therefore, interested in the outcome of the defendant's trial. The majority concludes from this that "the *possibility* existed that Ms. Cecil would be susceptible to voting to convict Mr. Christian, so as to preclude any later attempts to bring charges against her nephew, Mr. Eric Walls" (emphasis added). The majority further surmises that "[i]t would be unreasonable to assume that during [Ms. Cecil's discussions with Eric Walls's mother] there was no expression of concern that authorities might seek to criminally prosecute Mr. Eric Walls."

I believe, rather, that the facts solicited from Ms. Cecil during voir dire constituted useful information which the defendant might use to intelligently exercise his peremptory challenge. The facts, however, do not rise to the level of a challenge for cause.

The problem with the majority's conclusions is that they are based on mere speculation. The facts, on the other hand, do not leave a clear and definite impression that Ms. Cecil would be unable to faithfully and impartially apply the law. Also, no actual prejudice has been demonstrated in this case. Accordingly, the trial court did not abuse its discretion in failing to strike Ms. Cecil for cause and should be affirmed. For this reason, I dissent.

STARCHER, Chief Justice, concurring:

(Filed Jan. 6, 2000)

I agree with the Court's opinion. I write separately to state my appreciation for this Court's willingness to reverse a criminal conviction because a defendant didn't get a fair jury panel.

In several recent cases, I have dissented because a majority of this Court was willing to tolerate a jury panel that I thought was arguably unfair. I believe that in the instant case, we have taken the proper approach.

Ideally, we want our criminal justice process to be so even-handed that even a convicted defendant's family will have to agree that a trial was fair—although that is probably too much to expect in most cases. One of the easiest and cheapest things we can do to further this goal is to only use jurors who are not even arguably suspect because of possible bias. That was our standard in the instant case, and it is one to which trial courts must adhere.